Except as set forth herein, all persons or entities having unsatisfied PACA claims against the defendants arising under or relating to the debts of the Company shall have the right to intervene in this action only by following the procedure established herein.

2. The temporary restraining order as to the Principals, as continued by the court on consent, shall be withdrawn and dissolved until further order of this court; however, nothing contained herein shall preclude any party from seeking redress against, or seeking to add, additional defendants to these proceedings.

3. Annexed hereto is the Company's most recent aged accounts receivable report. The Company shall provide a detailed and updated listing of all outstanding accounts receivable (the "Receivables"), accounts payable and all other business assets to this court and to the undersigned Counsel, within five (5) business days of the date of this order.

4. This order will be binding upon the parties to this action, their officers, agents, employees, banks, or attorneys and all other persons or entities who receive actual notice of the entry of this order. In this regard, the Company is hereby directed to serve a copy of this order on all financial institutions with which the

-7-

Company does business or who may be holding any assets for or on behalf of the Company.

5. Due to the agreement reached between the Plaintiffs and the Company, the parties agree that no bond is required in this matter.

II. **ESTABLISHMENT OF TRUST ACCOUNTS:**

6. The Company is hereby directed, within three (3) business days of the date of this order, to open an interest bearing account at Boston Private Bank, with such account to be opened under the account name of "Dubinsky PACA Trust Account," to hold the collected Receivables until further order of this court (the "PACA Trust Account").

7. The Company is similarly directed, within three (3) business days of the date of this order, to open an interest bearing account at Boston Private Bank, with such account to be opened under the account name of "Dubinsky Escrow Account", to hold the proceeds of all assets other than collected Receivables until further order of this court (the "Escrow Account").

8. The Recovery Group, LLC ("TRG") shall serve as signatory on both the PACA Trust Account and the Escrow Account.

-8-

9. The Company shall file reports of all account activity with the court and serve the same upon Counsel, on at least a monthly basis or otherwise as the court may require. No distributions or withdrawals shall be made from these trust accounts except by further order of this court or as otherwise authorized herein. The Company shall render a detailed accounting to Counsel of all sums collected every two (2) weeks, and TRG shall forward to Counsel a detailed listing of the Company's outstanding Receivables on or before the 15th of every month. The Company shall file with the court, within five (5) business days hereof, acknowledgment by TRG of its receipt of this order and acceptance of its responsibilities hereunder.

10. Immediately upon opening both the PACA Trust Account and the Escrow Account, the Company shall transfer any and all sums held in the Company's name, or otherwise derived from the Company's Receivables, into the PACA Trust Account and shall continue depositing all sums recovered on the Company's Receivables into this account. Similarly, the Company shall deposit into the Escrow Account any and all sums derived from liquidations of the Company's assets other than Receivables. The Company acknowledges that it is presently

-9-

holding $605,000.00 in an interest bearing account representing 100% of the proceeds of the sale of its Dock Division and Fresh Cut Division, and is presently holding at least $929,705.33 in an interest-bearing account representing 100% of the proceeds of Receivables collections.

11. Any and all interest which accrues on the funds, in both the PACA Trust Account and the Escrow Account, shall follow the funds into the hands of the creditors ultimately deemed entitled to such funds.

III. WINDING UP AUTHORITY

12. The Company, through those duly appointed agents identified in the attached liquidation budget, shall collect the Company's Receivables through any reasonable means and the gross amounts recovered shall be deposited into the PACA Trust Account. The expenses incurred, and to be incurred, pursuant to the liquidation budget, shall be paid from the PACA Trust Account.

13. The Company shall also sell any and all assets, other than the Receivables, through any reasonable means, but only upon notice and court order. The Company shall deposit the gross proceeds of any such sale of assets into the Escrow Account for the benefit of all creditors of the Company, including, but not

limited to, the PACA trust claimants.

14. The Company shall provide Counsel with copies of all relevant closing documents and settlement statements related to the sale of the assets of the Company's Dock Division and Fresh Cut Division within five (5) business days of the entry of this order, and shall promptly provide Counsel with any other documents or information related to such sales of assets or other books and records of the Company, as Counsel may reasonably request.

15. The rights of any and all creditors or other interested parties to the sums in the PACA Trust Account or Escrow Account, or both, shall be preserved and maintained until further order of this court.

16. In order to facilitate the winding up of the Company's operations, and to maximize the recovery for all creditors so entitled, the Company is hereby authorized to use and consume the PACA Trust Account pursuant to the liquidation budget attached hereto as Exhibit B.

17. The winding up period shall consist of a maximum of sixty (60) days commencing on November 10, 2000. Accordingly, the Company is hereby authorized to withdraw only those sums identified in Exhibit B (liquidation budget)

-11-

from the PACA Trust Account to satisfy the projected costs of this winding up period. The account from which these payments are made shall not determine the class of creditors ultimately determined to be responsible for these expenses, and the rights of all creditors to seek a proper determination of such liability shall be preserved without prejudice.

IV. <u>CLAIMS PROCEDURE</u>

18. The Company shall, within five (5) business days from the date of this order, provide Counsel with a detailed listing of all accounts payable for which payment has not been made. The listing shall specifically include the full name, address and account balance for each account.

19. The Company shall then, within ten (10) business days from the date of this order, issue a written notice ("the Notice") to all such potential claimants directing them to file a verified claim together with all dates and deadlines relevant to this claim procedure to each and every entity on the Company's listing of accounts payable. Such written notice shall be accompanied by a copy of this order and a Proof of Claim form ("Proof of Claim") for the convenience of the recipient, and shall be sent via certified mail, return receipt requested or equally verifiable

means to prove delivery upon the recipient.

20. The Notice shall be structured on the following schedule:

| | |
|---|---|
| Company to Compile and File A/P Listing | December 18, 2000 |
| Company to Issue Notice of Deadlines | December 22, 2000 |
| Deadline to File & Serve Proof of Claim | January 16, 2001 |
| Objections to any Proof of Claim Due | February 6, 2001 |
| Replies to Claims Objections Due | February 20, 2001 |
| Interim Pro-rata Disbursement of Available Funds to Undisputed Claims | March 9, 2001 |

21. Each unpaid creditor of the Company and each supplier of Produce to the Company, holding a claim for nonpayment for Produce or alleging rights under the PACA trust, shall file with the Clerk of the Court for this District and the undersigned Counsel, on or before the Proof of Claim deadline, a Proof of Claim together with any and all documents supporting its claim.

22. To be effective, each such claimant shall also serve a copy of its Proof of Claim upon the following individuals:

For Plaintiffs/PACA Claimants -
Michael J. Keaton, Esquire.
David M. Bagdade, Esquire.
KEATON & ASSOCIATES, P.C.
751 Roosevelt Road, Suite 220
Glen Ellyn, Illinois 60137
Tel: 630/942-9800

For the Company -
Whitton E. Norris, III, Esquire.
C. Michael Malm, Esquire.
DAVIS MALM & D'AGOSTINE
One Boston Place
Boston, Massachusetts 02108
Tel: 617/367-2500

-13-

11/10/2003 10:13 2023542731 MCCARRON AND DIESS PAGE 16/22
Case 3:00-cv-02177-JCH  Document 96-2  Filed 11/10/2003  Page 9 of 15

12/15/00 16:43 FAX 203 579 5681

Louis W. Diess, Esquire.
MCCARRON & DIESS
4910 Massachusetts Avenue, N.W.
Suite 18
Washington, DC 20016
Tel: 202/364-0400

R. Jason Read
RYNN & JANKOWSKY
4100 Newport Place Drive
Suite 700
Newport Beach, CA 92660-2451

23. Any such supplier or creditor who is served with notice of this order and fails to timely file its claim with the court and serve it on those persons listed in paragraph 22 above, shall be forever barred from thereafter asserting any claim against the PACA trust assets, whether in this court or any other forum. While claimants may be represented by counsel of their choice in this matter, all claims shall be verified by either owners or authorized officers of the respective claimants having personal knowledge of the facts comprising such claims.

24. Any party wishing to review or copy any documents may make arrangements with the Clerk of the Court or those persons listed above to view the documents, or arrange for copying at the requesting party's expense.

25. Objections to any PACA trust claims must be filed with the Clerk of the Court and served upon those persons listed above as well as the claimant whose claim is the subject of the Objection. Any and all such objections must be filed and served on or before the "Objection Deadline." Such objection must set forth in

-14-

detail the legal and factual basis for objection to each invoice subject to the objection.

26. On or before the "Reply Deadline," any PACA trust claimant whose claim is subject to an objection may file with the court a detailed response to any objection received, and serve those persons listed above as well as the objector to the claim.

27. Any PACA trust claim listed on a Proof of Claim to which no objection has been filed and served prior to the Objection Deadline, shall be deemed a valid claim for the full amount stated in the Proof of Claim.

28. The claimant and the objecting party shall thereafter exercise best efforts to resolve any Objections. Any timely objections to the allowance of PACA trust claims shown on the Claims Chart shall be resolved between the parties or, failing that, submitted to the court on motion for ruling.

29. After the Objection Deadline, the Company shall prepare a chart listing each person or entity having properly and timely filed a verified Proof of Claim, the amount of its claim as set forth on the Proof of Claim, the amount which is deemed valid in the absence of an objection and the amount, if any, subject to a pending

-15-

objection (the "Claims Chart"). The Claims Chart will also list the undisputed funds available in the PACA Trust Account for an immediate distribution ("Available Funds"). The Claims Chart shall be filed with the court and served upon all claimants having properly and timely filed a Proof of Claim. PACA trust beneficiaries shall be paid only from the PACA Trust Account. Any person seeking to challenge those funds in the Escrow Account as a PACA trust asset must do so no later than March 9, 2001, or be forever barred.

30. In order to ensure all PACA trust beneficiaries share in the costs and expenses incurred in enforcing the Defendants' obligations under the PACA trust on the same pro-rata basis as they are accepting the benefits of such actions, including the prospective costs of marshaling the PACA trust assets for their direct benefit, Counsel shall include their fees and costs as a separate line item expense in the Claims chart, with such fees and costs to be paid from the PACA Trust Account only after court approval and prior to distribution as stated above.

31. If no PACA trust claimant files an objection to the proposed pro-rata distributions as listed on the Claims Chart within ten (10) days of its being filed, all proposed distributions from the PACA Trust Account shall be conclusively

-16-

determined. The Company shall file both a motion for approval of the Proposed Distribution to PACA Trust claimants and a draft order directing the Company to disburse the Available Funds to the holders of valid PACA Trust claims in accordance with, and as set forth in, the Claims Chart.

32. The pro-rata portion of any PACA Trust claim subject to an objection shall be held in the PACA Trust Account until such time as the objection to the particular proposed distribution is resolved. Upon resolution of the objection, the reserve portion is either to be used to make the pro-rata distribution to the claim if the claimant prevails or is to be made available for distribution to other valid claims if the objection is sustained.

33. Until further order of this court, this court shall exercise exclusive *in rem* jurisdiction over this action, the PACA Trust Assets, the PACA Trust Account and the Escrow Account established pursuant to this order. The court also hereby retains jurisdiction to enter further orders to carry out this claims procedure, and to release the Escrow Account and any surplus in the PACA Trust Account, to the Company for payment to non-PACA trust claimants. Nothing contained in this order shall preclude any party from seeking to redress claims against parties other

-17-

than the Company in this or any other court.

**SO ORDERED.**

Dated this 15th day of December, 2000, at Bridgeport, Connecticut.

_____
Janet C. Hall
United States District Judge

**DUBINSKY, MUSTO, & PARMELEE**
CONSENT ORDER LIQUIDATION
PROJECTED BUDGET

| Week ending: | Week 1 11/10/2000 | Week 2 11/17/2000 | Week 3 11/24/2000 | Week 4 12/1/2000 | Week 5 12/8/2000 | Week 6 12/15/2000 | Week 7 12/22/2000 | Week 8 12/29/2000 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| **OPERATING EXPENSES** | | | | | | | | | |
| Phone | $63 | $63 | $63 | $63 | $63 | $63 | $63 | $63 | $504 |
| Leases | $52 | $52 | $52 | $52 | $52 | $52 | $52 | $52 | $416 |
| Health Insurance | $80 | $80 | $80 | $80 | $80 | $80 | $80 | $80 | $640 |
| Miscellaneous | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $400 |
| Electricity (paid by Fresh Impressions) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Water & Sewer (paid by Fresh Impressi) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Sub-Total Operating Expenses | $245 | $245 | $245 | $245 | $245 | $245 | $245 | $245 | $1,960 |
| **PAYROLL** | | | | | | | | | |
| Paul Petrillo | $1,200 | $1,200 | $1,200 | $1,200 | $1,200 | $1,200 | $1,200 | $1,200 | $9,600 |
| Deb Allen | $600 | $600 | $600 | $600 | $600 | $600 | $0 | $0 | $3,600 |
| Sub-Total Payroll | $1,800 | $1,800 | $1,800 | $1,800 | $1,800 | $1,800 | $1,200 | $1,200 | $13,200 |
| **TOTAL OPERATING EXPENSES** | $2,045 | $2,045 | $2,045 | $2,045 | $2,045 | $2,045 | $1,445 | $1,445 | $15,160 |
| **THE RECOVERY GROUP** | $12,500 | $8,750 | $7,125 | $6,625 | $5,875 | $5,125 | $5,125 | $5,875 | $57,000 |
| **TOTAL WEEKLY EXPENSES** | $14,545 | $10,795 | $9,170 | $8,670 | $7,920 | $7,170 | $6,570 | $7,320 | $72,160 |
| **NON-RECURRING EXPENSES** | | | | | | | | | |
| Commission - C. Church | $1,000 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $1,000 |
| Health Insurance | $12,448 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $12,448 |
| ADP arrearage | $2,500 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $2,500 |
| Cost of W-2's for Employees | $713 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $713 |
| 401K arrearage | $2,519 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $2,519 |
| Retention Bonuses | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Paul Petrillo | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Deb Allen | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $7,200 | $7,200 |
| Collection Incentive @ 1.0%* | $0 | $0 | $0 | $0 | $0 | $2,400 | $0 | $0 | $2,400 |
| Paul Petrillo | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Deb Allen | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $8,125 | $8,125 |
| | $0 | $0 | $0 | $0 | $0 | $4,875 | $0 | $0 | $4,875 |
| **TOTAL NON-RECURRING EXPENSES** | $19,180 | $0 | $0 | $0 | $0 | $7,275 | $0 | $15,325 | $41,780 |
| **TOTAL EXPENSES** | $33,725 | $10,795 | $9,170 | $8,670 | $7,920 | $14,445 | $6,570 | $22,645 | $113,940 |

Note:

The two remaining employees, P. Petrillo and D. Allen, have been offered an incentive package consisting of two components:

1) A stay bonus equal to six weeks salary for P. Petrillo ($7,200) and four weeks salary for D. Allen ($2,400); and
2) An accounts receivable collection incentive equal to one-half of one percent of the amount collected, which for purposes of this projected budget is assumed to be $1,300,000 and includes all amounts collected since November 3, 2000. This results in a total incentive payment of $13,000 which is split 37.5% to D. Allen and 62.5% to P. Petrillo by virtue of the fact that D. Allen works six of the eight weeks and P. Petrillo works the full eight weeks. This split may be adjusted based on actual relative performance. However the total incentive payment will be capped at one-percent (1%).



United States          Agricultural          P.O. Box 96456
Department of          Marketing             Washington, DC
Agriculture            Service               20090-6456

TERMINATION NOTICE                           February 27, 2001

PACA LICENSE-#770517
ANNIVERSARY DATE-01/14/01

DUBINSKY & SON INC WILLIAM
101 RESERVE RD
HARTFORD, CT 06114

Dear PACA Licensee:

Your license issued under the Perishable Agricultural Commodities Act (PACA) terminated on its anniversary date shown above since you did not pay the required annual license fee. Please note that the above license number is no longer valid and cannot be reinstated.

If your failure to send the annual fee was an oversight, you must promptly contact the regional office serving your area by calling 1-800-495-PACA (7222). That office will assist you in completing and processing your application for a new PACA license.

If you believe that your company no longer needs to be licensed under the PACA, you should contact the regional office to confirm your position and to prevent further contact from the Department of Agriculture concerning this matter.

You should understand that your firm is not currently licensed to conduct operations subject to the PACA, and any such unlicensed operations could result in an injunction and civil penalty. Therefore, your immediate action to obtain a new license is required. Please note that the mere submission of an application and license fees does not authorize your firm to engage in business subject to the PACA until a license is issued.

Sincerely,

*James E. Bright*

James E. Bright, Senior Marketing Specialist
License and Program Review Section
P.A.C.A. Branch
Fruit and Vegetable Programs

The Agricultural Marketing Service
is an agency of the
United States Department of Agriculture

EXHIBIT ___2___