U.S. DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| EAST COAST BROKERS & PACKERS, INC., et al.<br><br>       v.<br><br>       Plaintiffs<br><br>WILLIAM DUBINSKY & SONS INC., also d/b/a Dubinsky & Musto & Parmelee, et al.<br><br>       Defendants | CIVIL ACTION NO.<br>3:00-CV-2177 (JCH) |
| DOMESTIC MUSHROOM CO., INC., d/b/a Gourmet's Finest, et al.<br><br>       Plaintiffs<br><br>       v.<br><br>WILLIAM DUBINSKY & SONS INC., also d/b/a Dubinsky & Musto & Parmelee, et al.<br><br>       Defendants | CIVIL ACTION NO.<br>3:00-CV-2184 (JCH) |

FILED
2003 DEC 16  A 10: 22

## AFFIDAVIT OF DANIEL S. DUBINSKY

I, Daniel S. Dubinsky, state as follows:

1. I am 43 years of age, and I have worked full-time in the produce industry continuously since I was 16 years old. I have no other job experience.

2. After leaving the employment of William Dubinsky & Sons, I took a new job in the produce industry in December 2000. The job was in Riverhead, New York, located near the end of Long Island. At about this time, it was my understanding that the Court and The Recovery Group would oversee the case and pay all PACA debt, and that I would not be involved in any other legal proceedings.

3. I commuted about four (4) hours a day to the new job from our house in Burlington, Connecticut, where I resided with my wife and two (2) daughters aged 13 and 10, for the past fifteen (15) years. But I often had to spend the nights on Long Island away from home.

4. Due to the time I had to spend away from my family because of the job location, in August 2001, my family and I moved to a rental home in Long Island. We put our house in Connecticut on the market and began to look for another home to purchase because the rent, especially during the vacation months, was very high. (We paid $9,000/mo during the summer season.) We moved at this time for an easier school transition for our daughters.

5. My family and I had very strong ties to Burlington, and the move was very stressful. But since I had a permanent job in Long Island in the only field in which I can make a living, it was necessary to make the move.

6. In November 2001, I was surprised to receive a letter from USDA saying they were filing a case against me. A copy of that letter is attached as Exhibit 1.

7. I asked McCarron & Diess to represent me because they had experience in PACA cases and were familiar with this case.

8. McCarron & Diess sent a letter to PACA on January 30, 2002, explaining why USDA should not proceed against me. See Exhibit 2. Then, on February 26, 2002, McCarron & Diess sent a second letter to PACA explaining that USDA should not proceed against me based on this Court's Order. See Exhibit 3.

9. I did not hear from anyone for a long time after that and I thought the matter was closed. We continued searching for a house to purchase, especially since we could not afford the summer rental rate we were going to be charged for the upcoming vacation season.

10. We had sold our house in Connecticut to obtain funds to purchase a new house in Long Island, and we took a $45,000 loss because we had to have the funds available. In May 2002, we purchased a house in Long Island and had to spend an additional $75,000 for renovations.

11. I have fully committed to my job and have made very good progress there based on a long-term commitment. At first, I was just buying and selling citrus. Then, around May 2002, I was promoted to manage 10 produce salespersons. In February 2003, I was assigned to manage the potato sales division of eight (8) people, which is the company's biggest product line with sales throughout the East Coast. I have also been heavily involved in creating and establishing a East Coast brand called "Fresh From The Start," which was a major investment of my time for the company. I became more and more invested in the company because I thought USDA was not taking any action against me. Taking this action now will destroy all the time and effort I have put into my job and family relocation for the last three (3) years, and for my future.

I solemnly declare under the penalties of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

*/s/ Daniel S. Dubinsky*
Daniel S. Dubinsky

| | | | |
|---|---|---|---|
| States Department of Agriculture | Agricultural Marketing Service | P.O. Box 96456 Washington, DC 20090-6456 | (202) 720-6873 (202) 720-8868 (Fax) |

In reply refer to
File PACA D-2244

October 30, 2001

Mr. Daniel S. Dubinsky
128 Taine Mtn. Road
Burlington, Connecticut 06013

Dear Mr. Dubinsky:

A complaint under the Perishable Agricultural Commodities Act (PACA) was filed on October 24, 2001, against William Dubinsky & Son Inc., in Hartford, Connecticut. The complaint alleges that the company committed violations of section 2(4) of of the Act during the period of October 1999 through December 2000 by failing to pay $1,795,045.82, to 138 sellers involving perishable agricultural commodities which were purchased, received and accepted in interstate commerce. Officers, directors, and owners of more than 10 percent of the outstanding stock of a corporation are responsibly connected under the PACA. The Department's records show that you were president and secretary during the period the alleged violations occurred.

A decision could be issued finding that the firm has committed violations of the PACA. This would result in certain employment and licensing restrictions placed upon you as provided for under Section 4(b) and 8(b) of the PACA. If you were not responsibly connected with William Dubinsky & Son Inc., during the period at issue, you should write to this office within 30 days explaining the reasons for your position and supporting it with proper evidence.

The Complaint has been forwarded to the corporation, which should file its answer with the Hearing Clerk, Office of the Secretary. A copy of the Complaint is enclosed for your reference. The Rules of Practice, and the Act and Regulations are available on our website, **www.ams.usda.gov/fv/paca.htm**. If you do not have access to the Internet, contact us at (202)720-6873 and we will forward hard copies.

Sincerely,

Jane E. Servais, Head
Head, Trade Practice Section
PACA Branch
Fruit and Vegetable Programs

Enclosure

EXHIBIT _____1_____

# McCarron & Diess
### THE MILLER BUILDING
4910 MASSACHUSETTS AVENUE, N.W., SUITE 18
WASHINGTON, D.C. 20016

(800) AGRI-LAW
(202) 364-0400
FAX (202) 364-2731
smccarron@mccarronlaw.com

Specializing in Cases under
the Perishable Agricultural
Commodities Act (PACA)
www.mccarronlaw.com

January 31, 2002

**VIA OVERNIGHT MAIL**

Jane E. Servais
Trade Practice Section, PACA Branch
U.S. Dept. of Agriculture
14th & Independence Ave., S.W.
Room 1081, South Bldg.
Washington, DC 20250-9200

     Ref:   **Daniel S. Dubinsky**
              **PACA RC 02-0012**

Dear Ms. Servais:

    This is in response to your letter dated October 30, 2001, regarding the responsibility connected status of Daniel S. Dubinsky to William Dubinsky & Son, Inc. (hereafter "the Company").

    Until November 25, 1997, Mr. Dubinsky held 26.28% of the stock of the Company (i.e. 41 shares out of 156 shares) and was the Vice President and Secretary of the Company. See enclosed Exhibit 1, which is the Stock Purchase Agreement between Noreast Fresh, Inc. and the Company, attached to which is a Disclosure Statement, which confirms the shareholder and officership status of Mr. Dubinsky in Sections 4(a) and 4(b). On November 25, 1997, Mr. Dubinsky, along with the other shareholders of the Company sold their stock to Noreast Fresh, Inc. ("Noreast") on the terms stated in Exhibit 1.

    After November 1997, Mr. Dubinsky became an employee of the Company. His chief duties were buying and selling produce. There was a need for a person on the premises to sign certain documents as an officer, and Mr. Dubinsky was designated as an officer of the Company for that purpose. However, he was only a nominal officer, as he did not have any authority over the financial affairs of the Company.

    In January 2000, the Board of Directors of the Company hired The Recovery Group, headed by Eric Danner, to oversee all operations and to pursue a sale of the

**EXHIBIT 2**

Jane E. Servais
Trade Practice Section
PACA Branch
U.S. Dept. of Agriculture
January 31, 2002
Page 2

business. Mr. Dubinsky continued his role as an employee and nominal officer of the Company until the Company ceased operating near the end of 2000. Mr. Danner advised Mr. Dubinsky during this time that all produce debt would be paid in full upon the sale of the Company.

The nonpayment violations alleged in the Complaint occurred while The Recovery Group was in charge of the operations of the Company. Mr. Dubinsky had no control over the funds of the Company. He did not decide who would be paid by the Company or how much the Company would pay its creditors. In sum, he was not actively involved in the activities that resulted in any PACA violations.

Please advise if you have any questions.

Sincerely,

Stephen P. McCarron

SPM:deb

**McCarron & Diess**
THE MILLER BUILDING
4910 MASSACHUSETTS AVENUE, N.W., SUITE 18
WASHINGTON, D.C. 20016

(800) AGRI-LAW
(202) 364-0400
FAX (202) 364-2731
smccarron@mccarronlaw.com

Specializing in Cases under
the Perishable Agricultural
Commodities Act (PACA)

www.mccarronlaw.com

February 26, 2002

**VIA OVERNIGHT MAIL**
Jane E. Servais
Trade Practice Section, PACA Branch
U.S. Dept. of Agriculture
14th & Independence Ave., S.W.
Room 1081, South Bldg.
Washington, DC 20250-9200

Ref:   ***Daniel S. Dubinsky***
***PACA RC 02-0012***

Dear Ms. Servais:

This office represents Daniel S. Dubinsky in this proceeding. I previously wrote to you to explain why Mr. Dubinsky was not responsibly connected with William Dubinsky & Son, Inc. ("Dubinsky") during the period when Dubinsky allegedly violated the PACA.

Since that letter to you, I have received a copy of a Permanent Injunction issued by the United States District Court for the District of Connecticut. The injunction prohibits all persons and entities from prosecuting any action against William Dubinsky & Sons, or any of its officers, directors, agents or employees for PACA-related claims arising from activity of Dubinsky prior to November 13, 2000. A copy of the Permanent Injunction is enclosed.

To the extent the Department determines that Mr. Dubinsky was an officer of Dubinsky, Mr. Dubinsky contends that the Permanent Injunction issued by the United States District Court bars the Department from proceeding any further in this case.

Please advise if you have any questions.

Sincerely,

Stephen P. McCarron

EXHIBIT ____3____